**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Midwest Motor Supply Co.**
**d/b/a Kimball Midwest,**

**Plaintiff,**

**v.**

**Rich Nietsch, *et al.*,**

**Defendants.**

**Case No. 2:22-cv-4049**

**Judge Michael H. Watson**

**Magistrate Judge Vascura**

**OPINION AND ORDER**

This matter is before the Court on Midwest Motor Supply Co.'s ("Plaintiff") motion for partial summary judgment, ECF No. 137, and Rich Nietsch ("Nietsch"), Chad Davis ("Davis"), Rick Kirkpatrick ("Kirkpatrick"), Cliff Sachs ("Sachs"), Pamela Schrader ("Schrader"), Sean Patrick ("Patrick," and collectively with Nietsch, Davis, Kirkpatrick, Sachs, and Schrader, "Other Defendants"), and Bill Hoeftmann's ("Hoeftmann," and collectively with Other Defendants, "Defendants") motion for summary judgment, ECF No. 138.[1] Additionally, the Court addresses Defendants' motion to strike portions of Plaintiff's reply in support of its motion for partial summary judgment, ECF No. 153. All three

[1] Plaintiff filed redacted versions of its motion for partial summary judgment, ECF Nos. 114, 145, and a sealed, unredacted version of the same, ECF No. 137. Similarly, Defendants filed redacted versions of their motion for summary judgment, ECF Nos. 112, 146, and a sealed, unredacted version of the same, ECF No. 138. For ease of reference, the Court will refer to and cite from the sealed, unredacted motions, ECF Nos. 137, 138, for purposes of this Order.

motions are fully briefed and ripe for consideration. ECF Nos. 135, 136, 148, 149, 158, 165.

## I. STATEMENT OF FACTS

Plaintiff is an Ohio corporation that sells maintenance, repair, and operations ("MRO") supplies throughout the United States. Third Amended Complaint ("TAC") ¶ 1, ECF No. 59. Defendants are all former employees of Plaintiff, each having worked in sales for Plaintiff at various times and for various durations over the past twenty-five years. *See* Davis Decl., ECF No. 146-1; Kirkpatrick Decl., ECF No. 146-3; Nietsch Decl., ECF No. 146-4; Sachs Decl., ECF No. 146-5; Schrader Decl., ECF No. 146-6; Patrick Decl., ECF No. 146-7; Hoeftmann Dep. 88:12–14, ECF No. 138-2.

At or around the time that each Defendant started working for Plaintiff, they all signed employment agreements ("Employment Agreements"). Nietsch Agmt., ECF No. 2-1; Davis Agmt., ECF No. 2-3; Kirkpatrick Agmt., ECF No. 2-6; Sachs Agmt., ECF No. 2-7; Schrader Agmt., ECF No. 2-8; Patrick Agmt., ECF No. 130-4; Hoeftmann Agmt., ECF No. 2-5. The agreement that Hoeftmann signed ("Hoeftmann Agreement") differs slightly from the agreements that the Other Defendants signed ("Other Employment Agreements"), but they all contain, *inter alia*, restrictive covenants that prohibit certain conduct by Defendants following the termination of their employment with Plaintiff. *Compare* Hoeftmann Agmt., ECF No. 2-5, *with* Nietsch Agmt., ECF No. 2-1; Davis Agmt., ECF No. 2-3;

Kirkpatrick Agmt., ECF No. 2-6; Sachs Agmt., ECF No. 2-7; Schrader Agmt., ECF No. 2-8; Patrick Agmt., ECF No. 130-4.

Hoeftmann left his employment with Plaintiff in December 2017. Hoeftmann Dep. 49:13–50:4, ECF No. 138-2. Shortly thereafter, he started working at MRO Systems—an MRO supplier that competes with Plaintiff, which Hoeftmann formed with non-parties Robert Sapio and Paul Paternoster. Sapio Dep. 11:6–12:17; Hoeftmann Dep. 7:12–8:1.

Then, at various points from 2019 to 2022, the Other Defendants similarly left their employment with Plaintiff and began working for MRO Systems (except for Patrick, who worked for 1st Ayd—another competitor of Plaintiff—following his employment with Plaintiff). Davis Decl., ECF No. 146-1; Kirkpatrick Decl., ECF No. 146-3; Nietsch Decl., ECF No. 146-4; Sachs Decl., ECF No. 146-5; Schrader Decl., ECF No. 146-6; Patrick Decl., ECF No. 146-7. In so doing, Plaintiff alleges that Defendants violated various provisions of the Employment Agreements, including the restrictive covenants contained therein. *See generally* TAC, ECF No. 59. As a result, Plaintiff filed the action currently before the Court.

## II. PROCEDURAL HISTORY

Plaintiff initially filed this case against only Nietsch, alleging breach of contract and misappropriation of trade secrets. Compl., ECF No. 1. During the ensuing fifteen months of litigation, Plaintiff amended its complaint three times,

adding and dropping both claims and parties, leading to the now-operative TAC. ECF No. 59.

The TAC asserts the following claims against Defendants, as well as Joe Carroll ("Carroll") and Daniel Hayes ("Hayes"): (1) breach of contract; (2) misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"); (3) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"); (4) conversion; (5) tortious interference; and (6) civil conspiracy. The parties have since stipulated to dismissal of all claims against Carroll and Hayes pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), ECF No. 122, but the claims otherwise stand as alleged in the TAC.

Following unsuccessful mediation efforts, ECF No. 93, both Plaintiff and Defendants now seek summary judgment. ECF Nos. 137, 138.

## III. ANALYSIS

Defendants move for summary judgment on all six claims asserted against them. ECF No. 138 at PAGEID # 4785. Plaintiff, on the other hand, moves for summary judgment on only a subset of its claims: (1) its breach of contract claims against all Defendants; (2) its tortious interference claims against all Defendants; and (3) its civil conspiracy claims against all Defendants, save for Schrader. ECF No. 137 at PAGEID # 2423.

The Court addresses the parties' arguments with respect to each claim below. For the reasons therein, Plaintiff's motion for partial summary judgment,

ECF No. 137, is **GRANTED in part and DENIED in part**, and Defendants' motion for summary judgment, ECF No. 138, is **GRANTED in part and DENIED in part**.

## A. Standard of Review

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (citation omitted). Summary judgment will "not lie if the dispute about a material

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

**B. Breach of Contract Claims**

Plaintiff's breach of contract claims are premised on alleged violations of two different aspects of the Employment Agreements by each Defendant: (1) restrictive covenants; and (2) a confidentiality provision. TAC, ECF No. 59 at PAGEID # 670.

The Employment Agreements are subject to Ohio law. Nietsch Agmt. ¶ 12, ECF No. 2-1; Davis Agmt. ¶ 12, ECF No. 2-3; Kirkpatrick Agmt. ¶ 12, ECF No. 2-6; Sachs Agmt. ¶ 12, ECF No. 2-7; Schrader Agmt. ¶ 12, ECF No. 2-8; Patrick Agmt. ¶ 12, ECF No. 130-4; Hoeftmann Agmt. ¶ 8, ECF No. 2-5; *see Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987) ("Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties."). "Under Ohio law, the elements of a breach of contract

claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citations omitted); *see also Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018) (restating the same elements for a breach of contract claim).

**1. Restrictive Covenants**

Plaintiff argues it is entitled to summary judgment on its breach of contract claims with respect to the restrictive covenants because "[t]he undisputed evidence shows that Hoeftmann breached his covenant not to compete" and that all Defendants "breached their agreements not to solicit." ECF No. 137 at PAGEID # 2443. Defendants argue, on the other hand, that they are entitled to summary judgment on the same because the restrictive covenants at issue are "vastly overbroad and unenforceable." ECF No. 138 at PAGEID # 4812. Alternatively, Defendants argue that Plaintiff "cannot provide any evidence to demonstrate that Defendants" violated the restrictive covenants. *Id.* at PAGEID # 4816.

Under Ohio law, restrictive covenants are enforceable only if they are reasonable. *See Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022) (citing *Lake Land Emp. Grp. of Akron, LLC v. Columber*, 804 N.E.2d

27, 33 (Ohio 2004)). To be reasonable, restrictive covenants must: "(1) be 'no greater than is required for the protection of the employer,' (2) 'not impose undue hardship on the employee,' and (3) not be 'injurious to the public.'" *James B. Oswald Co. v. Neate*, 98 F.4th 666, 673 (6th Cir. 2024) (quoting *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1975)). The party seeking to enforce the restrictive covenant must establish all three of the *Raimonde* elements "by clear and convincing evidence." *Id.* (citation omitted). In assessing the reasonableness of a restrictive covenant under *Raimonde*, "courts should keep in mind nine fact-specific considerations."[2] *Id.* (citation modified).

If the Court finds any covenant unreasonable, it has discretion to modify it "to make it reasonable and enforceable, [though] it is not required to do so." *Kross Acquisition Co., LLC v. Groundworks Ohio LLC*, 236 N.E.3d 453, 457 (Ohio Ct. App. 2024) (citation omitted).

**a. Hoeftmann Agreement**

The Hoeftmann Agreement contains a noncompete provision and a non-

[2] The nine fact-specific considerations enumerated in *Raimonde* are: (1) the absence or presence of limitations as to time and space; (2) whether the employee represents the sole contact with the customer; (3) whether the employee is possessed with confidential information or trade secrets; (4) whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; (5) whether the covenant seeks to stifle the inherent skill and experience of the employee; (6) whether the benefit to the employer is disproportional to the detriment to the employee; (7) whether the covenant operates as a bar to the employee's sole means of support; (8) whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and (9) whether the forbidden employment is merely incidental to the main employment. *Raimonde*, 325 N.E.2d at 547.

solicitation provision, both of which contain two restrictive covenants at issue here. *See* Hoeftmann Agmt. ¶¶ 5–6, ECF No. 2-5. The Court addresses the parties' arguments with respect to each of those restrictive covenants before turning to the Other Employment Agreements.

**i. Noncompete Paragraph 5(A)**

The first restrictive covenant at issue prohibits Hoeftmann from associating with any business that "competes directly or indirectly with [Plaintiff] or [Plaintiff's] employees, sales representatives or independent contractors with respect to their sales of [Plaintiff's] products" for two years following the termination of his employment with Plaintiff. Hoeftmann Agmt. ¶ 5(A), ECF No. 2-5. However, the covenant is also subject to a violation clause, which provides that, if Hoeftmann violates the covenant, "the terms of [the] covenant shall continue for an additional two (2) year period from the time that such violations cease."[3] Hoeftmann Agmt. ¶ 5, ECF No. 2-5.

*a) Employer's Protection*

The first *Raimonde* element requires a restrictive covenant to be "no greater than is required for the protection of the employer." *Raimonde*, 325 N.E.2d at 547. In other words, restrictive covenants "will be enforced only to the

[3] The parties refer to this clause as a "tolling provision." *See, e.g.*, ECF No. 136 at PAGEID # 2304; ECF No. 138 at PAGEID # 4812. But the clause does not "toll" anything because, under the agreement's plain language, a violation of the restrictive covenant automatically extends its application by two years. Hoeftmann Agmt. ¶ 5, ECF No. 2-5. Thus, the Court refers to the same as a "violation clause" herein.

extent that the restraints imposed thereby are reasonably necessary to protect the employer's legitimate business interests." *James B. Oswald Co.*, 98 F.4th at 673. "It is the employer's burden to prove that there is a legitimate business interest to be protected" by a restrictive covenant. *Total Quality Logistics, LLC v. EDA Logistics LLC*, No. 23-3713, 2024 WL 4372312, at *5 (6th Cir. Oct. 2, 2024).

Plaintiff contends that this restrictive covenant is "tailored to advance [its] legitimate interests in protecting existing customer relationships and preventing [Hoeftmann] from using the skill, experience, training and confidential information [he] acquired during [his] tenure in a manner advantageous to a competitor." ECF No. 137 at PAGEID # 2446.

The Court agrees that Plaintiff has identified legitimate business interests tied to this restrictive covenant. *See Union Home Mortg. Corp. v. Fratelli*, 2025 WL 639315, at *11 (N.D. Ohio Feb. 27, 2025), *appeal dismissed sub nom.*, 2025 WL 1756904 (6th Cir. June 9, 2025) ("Employers have legitimate business interests in preventing a former employee from using the former employer's customer lists or contacts to solicit new customers and in preventing a former employee from using the confidential information the former employee acquired during employment in a manner advantageous to a competitor." (citation modified)). But, for the following reasons, the covenant is not reasonably necessary to protect those interests.

With respect to temporal limitations, this noncompete provision applies in

the first instance for two years. Hoeftmann Agmt. ¶ 5, ECF No. 2-5. Two years "falls well within the range of temporal restrictions that Ohio courts have held to be reasonable for restrictive covenants." *Fratelli*, 2025 WL 639315, at *13 (citing cases). However, by Plaintiff's General Sales Manager's own admission, the violation clause could cause the restrictive covenant to apply *indefinitely*. Thompson Dep. 88:9–25, 89:1–3, ECF No. 138-3. For example, the parties plainly bargained for a two-year period of noncompetition. But, under the violation clause, Hoeftmann could abide by the restriction for one year, eleven months, and thirty days before breaching on the very last day of the two-year period. Rather than extend the noncompetition period for a single day, thereby giving Plaintiff the benefit of its bargain, however, a full two years would be added. And that could happen over and over, such that Plaintiff could obtain many more than two years of noncompetition and yet the restriction would remain in force. The Court finds that such a temporal limitation (or lack thereof) alone renders this restrictive covenant unreasonable, as it could unfairly restrict competition in perpetuity.[4] *See Doan Fam. Corp. v. Arnberger*, 522 P.3d 364,

[4] Plaintiff points the Court to *Shepard & Assocs., Inc. v. Lokring Tech., LLC*, No. 1:20-CV-02488-PAB, 2022 WL 312711 (N.D. Ohio Feb. 2, 2022), to argue that the Court should enforce the violation clause. ECF No. 137 at PAGEID # 2447. True, the Court in *Shepard* enforced a tolling provision. 2022 WL 312711, at *41. But the noncompete at issue in that case only applied for one year, and the tolling provision was, in fact, a tolling provision that tolled the noncompete "during the period between the *first* violation of any such restrictions and the entry of an order restraining the violation." *Id.* at *40 (emphasis added). As such, the tolling provision merely reinforced the parties' agreement to have the noncompete apply for one year and, unlike here, it could not operate to apply the noncompete in perpetuity. This case is therefore inapposite.

373 (Ks. Ct. App. 2022) ("While a two-year period is a reasonable restriction under these facts, an indefinite extension of that period is not a reasonable restraint"); *Interra Int'l, LLC v. Al Khafaji*, No. 1:16-cv-1523, 2017 WL 4866266, at *13 (N.D. Ga. Mar. 21, 2017) ("The Court finds that this provision tolling the two-year limitation term during any breach by the employee is unreasonable because of the lack of a definite time limitation.").

The lack of any geographic limitation on this covenant also weighs against its enforceability. The covenant plainly prohibits Hoeftmann from associating with any business that "competes directly or indirectly with" Plaintiff anywhere in the world. Hoeftmann Agmt. ¶ 5(A), ECF No. 2-5. But Hoeftmann's work for Plaintiff was limited to at most Illinois, Wisconsin, Indiana, Missouri, and Minnesota. McCurdy Decl. ¶ 65, ECF No. 137-1; Hoeftmann Dep. 52:16–53:10, ECF No. 138-2. And by Plaintiff's own admission, it "sells less than a quarter of one percent of the total MRO business in the country" and "has thousands of competitors" across the country. ECF No. 137 at PAGEID # 2424. Under such circumstances, "the lack of any geographic limitations makes the noncompete clause unduly restrictive." *Reliant Services MJF, LLC v. Brown*, No. CA2024-11-081, 2025 WL 3440134, at *5 (Ohio Ct. App. Dec. 1, 2025) (citations omitted).

The second and ninth *Raimonde* factors, on the other hand, favor a finding of enforceability for the following reasons, respectively: (1) evidence, which is undisputed by Defendants, suggests that Hoeftmann was the "sole regular sales

contact" for his customers when working for Plaintiff, McCurdy Decl. ¶ 20, ECF No. 137-1; and (2) the work that Hoeftmann does for MRO Systems is very similar to the work that he did for Plaintiff, Hoeftmann Dep. 7:14–8:13, ECF No. 138-2. But those factors are not enough to overcome the unreasonable temporal and geographic limitations associated with the restrictive covenant.

Accordingly, the Court finds that the restraints imposed by this covenant are not "reasonably necessary to protect [Plaintiff's] legitimate business interests." *See James B. Oswald Co.*, 98 F.4th at 673.

*b) Undue Hardship*

The Court additionally finds that this restrictive covenant imposes undue hardship on Hoeftmann for three reasons.

First, "the covenant seeks to stifle the inherent skill and experience of" Hoeftmann. *See Raimonde*, 325 N.E.2d at 547. Hoeftmann had roughly 16 years of experience as an MRO salesperson prior to his employment with Plaintiff, and evidence suggests that he had already established himself in the industry before that point. Hoeftmann Dep. 47:6–49:12, ECF No. 138-2. And though "it is likely that he developed and honed some of his skills and talents during his [fifteen] plus years of employment with" Plaintiff, a restrictive covenant as broad as this one—which all but precludes Hoeftmann from exercising his independently developed MRO skill and experience in any capacity for a potentially indefinite period—is unduly burdensome. *Fratelli*, 2025 WL 639315,

at *14; *see Legacy Roofing Servs. LLC v. Fusco*, 710 F. Supp. 3d 553, 572 (N.D. Ohio 2024).

Second, the covenant is disproportional to the detriment of Hoeftmann because it "disproportionately restricts competition without relation to protectable [] interests," for the reasons stated *supra* in Section III.B.1.a.i.a. *See Legacy*, 710 F. Supp. 3d at 572. So, this *Raimonde* factor weighs against reasonableness as well.

Third, the covenant effectively "operates as a bar to [Hoeftmann's] sole means of support." *See Raimonde*, 325 N.E.2d at 547. Given that Hoeftmann has worked in the MRO industry for the past 40 years, "it is reasonable to conclude that [his] primary marketable skills are in" MRO sales. *Legacy*, 710 F. Supp. 3d at 572. And because this restrictive covenant essentially precludes Hoeftmann from working in the MRO industry, it would "greatly restrict [his] ability to earn a living." *Id.*

Thus, this restrictive covenant, Hoeftmann Agmt. ¶ 5(A), ECF No. 2-5, unduly burdens Hoeftmann.

*c) Injury to Public*

The third *Raimonde* element "is primarily concerned with the public's interest in promoting fair business competition." *UZ Engineered Prods. Co. v. Midwest Motor Supply Co.*, 770 N.E.2d 1068, 1081 (Ohio Ct. App. 2001) (citation omitted). The parties do not squarely address this element, but it "is undisputed

that there are a multitude of [MRO] options nationwide," *see* Thompson Dep. 58:5–8, ECF No. 138-3. *Horter Inv. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 910 (S.D. Ohio 2017); *see also UZ Engineered Prods. Co.*, 770 N.E.2d at 1081 (explaining that "the MRO industry is highly competitive"). So, the public "have many options available for their [MRO] needs and are not restricted in moving their business from one [MRO supplier] to another as a result of the" restrictive covenant. *Horter*, 257 F. Supp. 3d at 910. Therefore, the covenant is not injurious to the public.

*d) Modification*

For the above reasons, Plaintiff has failed to establish that this restrictive covenant "is no greater than is required for the protection of the employer [and] does not impose undue hardship on the employee." *Raimonde*, 325 N.E.2d at 547. Accordingly, Plaintiff cannot meet its burden under *Raimonde*, and the Court finds that restrictive covenant to be unreasonable.

Though the Court has discretion to modify the covenant and enforce a reasonable version of the same, "it is not required to do so." *Kross*, 236 N.E.3d at 457 (citation omitted). Further, the Court's modification powers are limited "to the extent necessary to protect the employer's legitimate interests." *Raimonde*, 325 N.E.2d at 547.

Here, there is another restrictive covenant within the Hoeftmann Agreement—Noncompete Paragraph 5(B)—that protects the same interests

asserted by Plaintiff in connection with this covenant. *See infra* Section III.B.1.a.ii.a; Hoeftmann Agmt. ¶ 5(B), ECF No. 2-5. Because the Court elects to enforce a reasonable version of Noncompete Paragraph 5(B) to protect those interests, *infra* Section III.B.1.a.ii.d, modifying this covenant for the same exact purpose is not "necessary." *See Raimonde*, 325 N.E.2d at 547. Moreover, in light of the Court's decision to enforce Noncompete Paragraph 5(B) to the extent it is reasonable, Plaintiff's claims will be unaffected by the Court's decision here (because, as modified, this covenant would be functionally identical to the version of Noncompete Paragraph 5(B) the Court enforces). *See* TAC ¶¶ 62–73, 122–25, ECF No. 59; ECF No. 137 at PAGEID # 2449.

In other words, modification here would be redundant, so "the Court finds that it would be inappropriate to reconstruct" this restrictive covenant under *Raimonde*. *Legacy*, 710 F. Supp. 3d at 573.

*e) Breach Assessment*

Because Noncompete Paragraph 5(A) is unenforceable, Hoeftmann cannot be held liable for an alleged breach of the same. Accordingly, the Court **GRANTS** summary judgment to Hoeftmann on Plaintiff's breach of contract claims against Hoeftmann, to the extent they are based on alleged violations of Noncompete Paragraph 5(A) in the Hoeftmann Agreement. The Court **DENIES** summary judgment to Plaintiff on the same.

**ii. Noncompete Paragraph 5(B)**

The next restrictive covenant at issue prohibits Hoeftmann from associating with any business that:

> distributes or sells a Competing Product, in any city, town or place within the states in which the Employee's Area[5] is located where [Plaintiff] has conducted, currently conducts, or reasonably expects to conduct its business or where [Plaintiff's] sales representatives and/or independent contractors have sold, currently sell, or reasonably expect to sell [Plaintiff's] products.

Hoeftmann Agmt. ¶ 5(B), ECF No. 2-5. As with Paragraph 5(A), the restriction initially applies for a period of two years following Hoeftmann's separation from Plaintiff, but it is similarly subject to a violation clause providing that, if Hoeftmann violates the covenant, "the terms of [the] covenant shall continue for an additional two (2) year period from the time that such violations cease." Hoeftmann Agmt. ¶ 5, ECF No. 2-5.

*a) Employer's Protection*

Plaintiff's proffered interest in enforcing this restrictive covenant, as with Paragraph 5(A), is to "protect[] existing customer relationships and prevent[] [Hoeftmann] from using the skill, experience, training and confidential information [he] acquired during [his] tenure in a manner advantageous to a competitor." ECF No. 137 at PAGEID # 2446. These are legitimate business interests. *See Fratelli*, 2025 WL 639315, at *11. As set forth below, however, the Court again

---

[5] The "Employee's Area" is defined in the Hoeftmann Agreement as Illinois and Wisconsin. *See* Hoeftmann Agmt. Ex. B, ECF No. 2-5 at PAGEID # 80.

finds that the restrictive covenant is not reasonably necessary to protect those interests.

Because this covenant contains a violation clause identical to the one in Paragraph 5(A), the Court finds that it is subject to an unreasonable temporal limitation for the reasons discussed *supra* in Section III.B.1.a.i.a.

As for the geographic limitation, the covenant is limited in scope to competitors that operate in the markets in which Hoeftmann sold products for Plaintiff. *See* Hoeftmann Agmt. ¶ 5(B), ECF No. 2-5. This is a reasonable geographic scope. *Cretor Constr. Equip. LLC v. Gibson*, 738 F. Supp. 3d 950, 961 (S.D. Ohio 2024) ("As a general matter, so long as the geographic scope corresponds to the geographic reach of the markets the person served while employed at the former employer, as the proposed enforcement does here, that supports enforceability.").

Other *Raimonde* factors weigh in favor of enforceability as well. *See supra* Section III.B.1.a.i.a (discussing the second and ninth *Raimonde* factors).

However, the indefinite temporal limitation, alone, is enough to take this covenant beyond what is "reasonably necessary to protect [Plaintiff's] legitimate business interests." *See James B. Oswald Co.*, 98 F.4th at 673.

*b) Undue Hardship*

Undue hardship requires a showing that Hoeftmann's "employment options would be severely limited if the restriction were enforced." *UZ Engineered Prods.*

*Co.*, 770 N.E.2d at 1080 (citation omitted); *see also Horter*, 257 F. Supp. 3d at 909 ("Undue hardship requires a greater showing of impact upon a defendant than simple hardship." (citation modified)).

There are "thousands" of companies in the MRO industry throughout the country and, pursuant to this restrictive covenant, Hoeftmann can work for any of them that do not operate in the markets Hoeftmann served for Plaintiff. Thompson Dep. 58:5–8, ECF No. 138-3; Hoeftmann Agmt. ¶ 6(A), ECF No. 2-5. Moreover, Defendants have not presented any evidence suggesting that Hoeftmann's employment options outside of the territory he previously served are "severely limited." *UZ Engineered Prods. Co.*, 770 N.E.2d at 1080 (citation omitted). Under such facts, the Court finds that the covenant does not subject Hoeftmann to undue hardship.

*c) Injury to Public*

The reasoning set forth *supra* in Section III.B.1.a.i.c applies here as well. Accordingly, the Court finds that the covenant is not injurious to the public. *See Horter*, 257 F. Supp. 3d at 910; *see also UZ Engineered Prods. Co.*, 770 N.E.2d at 1081.

*d) Modification*

Plaintiff has failed to meet its burden under *Raimonde*, so the Court finds this restrictive covenant, too, unreasonable as drafted. But the only unreasonable aspect of this restrictive covenant is its unlimited temporal scope,

caused by the violation clause. Otherwise, Noncompete Paragraph 5(B) "is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde*, 325 N.E.2d at 547. Therefore, the Court elects to modify Noncompete Paragraph 5(B) to render it reasonable by striking the violation clause. The Court will otherwise enforce the covenant as written.

*e) Breach Assessment*

Plaintiff argues it is entitled to summary judgment on its claims under this covenant because "Hoeftmann testified he founded [MRO Systems], a company he admits sells the same products, within that two-year restricted period, while employed by [Plaintiff]" and "did so in a territory for which he was responsible" while employed by Plaintiff. ECF No. 137 at PAGEID # 2449. The territory in which Hoeftmann improperly competed with Plaintiff, according to Plaintiff, was in Minnesota. *Id.* (citing McCurdy Decl. ¶ 65, ECF No. 137-1).

True, it is undisputed that Hoeftmann sold competing products for MRO Systems in Minnesota within the two-year window following his employment with Plaintiff. Hoeftmann Dep. 88:12–14, ECF No. 138-2. But Noncompete Paragraph 5(B) only prohibits Hoeftmann from associating with businesses that sell competing products in Illinois and Wisconsin. *See* Hoeftmann Agmt. Ex. B, ECF No. 2-5 at PAGEID # 80. So, Hoeftmann's sales for MRO Systems in Minnesota are immaterial to Plaintiff's claims. And Plaintiff has not produced any

evidence showing that MRO Systems sold competing products in either Illinois or Wisconsin during the relevant timeframe. *See generally* ECF No. 37.

As a result, Plaintiff has failed to "make a showing sufficient to establish the existence of" a breach by Hoeftmann here. *Celotex*, 477 U.S. at 322. The Court therefore **GRANTS** summary judgment to Hoeftmann on Plaintiff's breach of contract claims against Hoeftmann, to the extent they are based on alleged violations of Noncompete Paragraph 5(B) in the Hoeftmann Agreement. The Court **DENIES** summary judgment to Plaintiff on the same.

**iii. Non-Solicitation Paragraph 6(A)**

The first restrictive covenant within the non-solicitation provision bars Hoeftmann from engaging in the following conduct:

> Solicit, divert or take away or attempt to solicit, divert or take away customers, clients or accounts of [Plaintiff], or call upon, communicate, advise, or consult with, write or respond to, or inform any customer, client or account of [Plaintiff] for the purpose of soliciting, selling, or recommending Competing Products where such customer, client or account was a customer, client or account previously contacted by, sold to, serviced or supervised by [Hoeftmann] while employed by [Plaintiff].

Hoeftmann Agmt. ¶ 6(A), ECF No. 2-5. Like the noncompete restrictive covenants, this restriction initially applies for two years following Hoeftmann's employment with Plaintiff, but it is subject to the same violation clause. *Id.*

*a) Employer's Protection*

Once again, the Court finds that Plaintiff's underlying interests in "protecting existing customer relationships and preventing [Hoeftmann] from

using the skill, experience, training and confidential information [he] acquired during [his] tenure in a manner advantageous to a competitor" are legitimate. ECF No. 137 at PAGEID # 2446. But, yet again, this restraint is not reasonably necessary to protect those interests.

As with the covenants under the noncompete provision, the temporal scope of this restrictive covenant renders it unreasonable because the violation clause could cause it to apply in perpetuity. *See supra* Section III.B.1.a.i.a.

The covenant is also not subject to any geographic limitations. *See* Hoeftmann Agmt. ¶ 6(A), ECF No. 2-5. However, it applies only to customers that Hoeftmann "contacted, sold to, serviced or supervised" while employed by Plaintiff. *Id.* Such "customer-based restrictions in lieu of geographic restrictions" are permitted under Ohio law, rendering this limitation reasonable. *Fratelli*, 2025 WL 639315, at *13 (citing *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 734 (S.D. Ohio 2006)).

Other *Raimonde* factors additionally favor enforcement, but they are not enough to overcome the unreasonable temporal limitation. *See supra* Section III.B.1.a.i.a (citing *Doan*, 522 P.3d at 373 and *Interra*, 2017 WL 4866266, at *13). Thus, Plaintiff has failed to meet its burden with respect to the first *Raimonde* element.

*b) Undue Hardship*

In compliance with this restrictive covenant, Hoeftmann may work for any

of the "thousands" of companies in the MRO industry, provided that he refrains from doing business with his former customers or accounts he contacted. Thompson Dep. 58:5–8, ECF No. 138-3; Hoeftmann Agmt. ¶ 6(A), ECF No. 2-5. So, the covenant does not "severely limit[]" Hoeftmann's employment options and therefore does not subject him to undue hardship. *See UZ Engineered Prods. Co.*, 770 N.E.2d at 1080 (citation omitted).

*c) Injury to Public*

For the same reasons set forth *supra* in Section III.B.1.a.i.c, the Court finds that the covenant is not injurious to the public. *See Horter*, 257 F. Supp. 3d at 910; *see also UZ Engineered Prods. Co.*, 770 N.E.2d at 1081.

*d) Modification*

Because Paragraph 6(A) of the Hoeftmann Agreement is overbroad as a result of its indefinite temporal scope, it is an unreasonable restrictive covenant. However, as with Noncompete Paragraph 5(B), this covenant is unreasonable *solely* because of its indefinite temporal scope (i.e., the violation clause). Without the violation clause, the Court finds that this covenant satisfies *Raimonde.* Accordingly, the Court elects to modify Paragraph 6(A) by striking the violation clause.

*e) Breach Assessment*

Plaintiff contends it is "undisputed" that Hoeftmann breached this restrictive covenant. ECF No. 137 at PAGEID # 2450. Defendants disagree, arguing that

Plaintiff "cannot provide any evidence to demonstrate" such a breach. ECF No. 138 at PAGEID # 4816. In truth, the evidence lies somewhere in between.

There is undisputed evidence establishing that [redacted] was one of Plaintiff's customers and that Hoeftmann sold to [redacted] while employed by Plaintiff. ECF No. 137-143 at PAGIED # 4626. Additionally, Defendants do not dispute that a sale to [redacted] on behalf of MRO Solutions occurred before this restrictive covenant "expired on December 29, 2019." ECF No. 135 at PAGEID # 2224. However, neither party has provided evidence affirmatively showing whether Hoeftmann was or was not the one who made the sale on behalf of MRO Solutions. The only evidence presented on this issue indicates that Hoeftmann cannot recall whether he made the sale. Hoeftmann Dep. 213:20–214:8, ECF No. 138-2.

So, there is a genuine issue of material fact as to whether Hoeftmann breached Paragraph 6(A) on at least one occasion, and neither party has satisfied its burden under Rule 56. *See* Fed. R. Civ. P. 56; *Anderson*, 477 U.S. at 248. The Court thus **DENIES** summary judgment on Plaintiff's breach of contract claims, to the extent they are based on Hoeftmann's alleged violations of Paragraph 6(A) in the Hoeftmann Agreement.

**iv. Non-Solicitation Paragraph 6(B)**

The second restrictive covenant under the non-solicitation provision prohibits Hoeftmann from "induc[ing] or attempt[ing] to induce any employee,

sales representative or independent contractor of [Plaintiff] to leave [their employment]." Hoeftmann Agmt. ¶ 6(B), ECF No. 2-5. This restrictive covenant only applies for the first "six (6) months following termination of [Hoeftmann's employment with Plaintiff]." *Id.* But it is subject to the same violation clause as every other restrictive covenant discussed herein. *Id.*

*a) Enforceability*

Plaintiff "has a legitimate business interest in preventing present and former employees from soliciting present and former co-workers to work for competitors." *Fratelli*, 2025 WL 639315, at *17. And violation clause aside, "[o]ther courts have found similar restrictive covenants to be reasonable." *Id.* (citing cases); *see also Mech. Constr. Managers, LLC v. Paschka*, No. 3:21-cv-302, 2022 WL 1591605, at *9 (S.D. Ohio May 19, 2022) (finding a one-year employee non-solicitation provision to be reasonable). This Court agrees, but the violation clause alone renders the covenant unreasonable for reasons the Court has already discussed. *See supra* Sections III.B.1.a.i–iii.

*b) Modification*

Because Paragraph 6(B) would be reasonable but for the violation clause, the Court hereby exercises its discretion to modify the covenant by striking the violation clause. *See Raimonde*, 325 N.E.2d at 547 (explaining that courts are empowered to modify restrictive covenants to render them reasonable).

*c) Breach Assessment*

Plaintiff argues it is entitled to summary judgment on its breach of contract claims asserted under this covenant because "Hoeftmann testified that he recruited [Plaintiff's] employees to join [MRO Systems] including Daniel Hayes, Chad Davis, Rick Kirkpatrick, and Cliff Sachs." ECF No. 137 at PAGEID # 2450.

True, it is undisputed that Hoeftmann recruited at least some of the Other Defendants to work for MRO Systems. Hoeftmann Dep. 65:16–19, 72:5–7, 74:2–13, 112:4–113:1, ECF No. 138-2. But it is also undisputed that none of the Other Defendants began working for MRO Systems until the very end of 2019—over two years after Hoeftmann left his employment with Plaintiff, and over eighteen months after this restrictive covenant expired. Schrader Decl., ECF No. 146-6; Davis Decl., ECF No. 146-1; Kirkpatrick Decl., ECF No. 146-3; Nietsch Decl., ECF No. 146-4; Sachs Decl., ECF No. 146-5; Patrick Decl., ECF No. 146-7. And Plaintiff has failed to present even a scintilla of evidence suggesting that Hoeftmann began recruiting the Other Defendants (or anyone else working for Plaintiff) during the prohibited six-month window. *See generally* ECF No. 137.

Accordingly, there is no genuine dispute as to any material fact here, and Defendants are entitled to judgment as a matter of law. *See Fulson v. City of Columbus*, 801 F. Supp. 1 (S.D. Ohio 1992) ("The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion." (citation omitted)). The Court therefore **GRANTS** summary judgment to

Hoeftmann on Plaintiff's breach of contract claims against Hoeftmann, to the extent they are based on alleged violations of Paragraph 6(B) in the Hoeftmann Agreement. The Court **DENIES** summary judgment to Plaintiff on the same.

**b. Other Employment Agreements**

The Other Employment Agreements contain non-solicitation provisions with three restrictive covenants at issue. *See, e.g.*, Nietsch Agmt. ¶¶ 5–6, ECF No. 2-1. The Court will address the parties' arguments regarding each of those restrictive covenants.

**i. Non-Solicitation Paragraph 5(A)**

The first restrictive covenant prohibits the Other Defendants from engaging in the following conduct:

> Contact, call upon, communicate, advise, consult, solicit, divert or take away business (or attempt to take away business) and/or conduct any business (or attempt to conduct business) for the purpose of soliciting, selling, and/or recommending any Competing Product to any customer, client or account of the Company who has conducted business in any manner with the Company during the twelve (12) months preceding the Employee's termination.

*See, e.g.*, Nietsch Agmt. ¶ 5(A), ECF No. 2-1. The restriction applies in the first instance "for a period of two (2) years following the termination of [each of the Other Defendants'] employment with [Plaintiff]." *Id.* But the covenant contains the same violation clause found in the restrictive covenants within the Hoeftmann Agreement. *Id.* (specifying that if one of the Other Defendants violates this covenant, "the terms of such covenant shall continue for an additional two (2)

years from the time that the violations cease").

*a) Employer's Protection*

Plaintiff has asserted legitimate business interests in "protecting existing customer relationships and preventing [the Other Defendants] from using the skill, experience, training and confidential information [they] acquired during [their] tenure in a manner advantageous to a competitor," ECF No. 137 at PAGEID # 2446. *See Fratelli*, 2025 WL 639315, at *11.

However, the covenant is subject to an unreasonable temporal scope because of the violation clause. *See supra* Section III.B.1.a.i.a.

The covenant is also not limited in geographic scope. *See, e.g.*, Nietsch Agmt. ¶¶ 5(A), ECF No. 2-1. And though "customer-based restrictions in lieu of geographic restrictions" are permitted under Ohio law, *Fratelli*, 2025 WL 639315, at *13, those restrictions still must be reasonable, *Raimonde*, 325 N.E.2d at 547. But this covenant prevents the Other Defendants from conducting business with *any* customers Plaintiff did business with in the preceding year. *See, e.g.*, Nietsch Agmt. ¶¶ 5(A), ECF No. 2-1. That is much broader than other customer-based restrictions courts have enforced under similar facts.[6] Further, Plaintiff

---

[6] *See, e.g.*, *Fratelli*, 2025 WL 639315, at *13 (upholding a restriction for customers the employee personally contacted or about whom the employee held confidential information); *Paschka*, 2022 WL 1591605, at *8 (enforcing a restriction for customers the employee personally contacted); *see also UZ Engineered Prods. Co.*, 770 N.E.2d at 1081 ("Under more usual circumstances, plaintiff's agreement would appear to be overly broad in precluding plaintiff's former employees from soliciting not only customers they called on while in plaintiff's employment but also all potential customers in the geographic area they worked for plaintiff.").

serves customers across the country, and its General Sales Manager testified that it would be "impossible" for the Other Defendants to know every one of Plaintiff's customers. Thompson Dep. 110:7–10, ECF No. 138-3. It logically follows that it would be impossible for the Other Defendants to know if they were violating this covenant upon joining one of Plaintiff's "thousands of competitors." *See* ECF No. 137 at PAGEID # 2424. For that reason alone, this is an unreasonable restraint.

Accordingly, the Court finds that Paragraph 5(A) of the Other Employment Agreements is not "reasonably necessary to protect [Plaintiff's] legitimate business interests." *See James B. Oswald Co.*, 98 F.4th at 673.

*b) Undue Hardship*

This restrictive covenant is disproportional to the detriment of the Other Defendants because it "disproportionately restricts competition without relation to protectable [] interests," for the reasons stated *supra* in Section III.B.1.b.i.a. *See Legacy*, 710 F. Supp. 3d at 572. Moreover, the covenant effectively precludes the Other Defendants from working in the MRO industry because they are unable to do so without the risk of unknowingly violating the covenant. *See supra* Section III.B.1.b.i.a. And because the Other Defendants have spent a significant portion of their careers in the MRO industry,[7] "it is reasonable to conclude that

[7] *See, e.g.*, Davis Decl., ECF No. 146-1; Kirkpatrick Decl., ECF No. 146-3; Nietsch Decl., ECF No. 146-4; Patrick Decl., ECF No. 146-7.

[their] primary marketable skills are in" MRO sales and that the covenant would thus "greatly restrict [their] ability to earn a living."[8] *Legacy*, 710 F. Supp. 3d at 572. As such, the Court finds that the restrictive covenant imposes undue hardship on the Other Defendants.

*c) Injury to Public*

For the same reasons set forth *supra* in Section III.B.1.a.i.c, the Court finds that the covenant is not injurious to the public. *See Horter*, 257 F. Supp. 3d at 910; *see also UZ Engineered Prods. Co.*, 770 N.E.2d at 1081.

*d) Modification*

In consideration of the above analysis, the Court finds that Paragraph 5(A) of the Other Employment Agreements is an unreasonable restrictive covenant under *Raimonde*.

Though the Court has discretion to modify this restrictive covenant, it elects not to do so because modification is not "necessary to protect the employer's legitimate interests." *Raimonde*, 325 N.E.2d at 547; *see also Kross*, 236 N.E.3d at 457 (explaining that courts are not required to modify unreasonable restrictive covenants). Like the noncompete provision in the Hoeftmann Agreement, there is another restrictive covenant within this non-solicitation provision—Paragraph 5(B)—that protects the same interests asserted

[8] Save for Sachs and Schrader, as evidence suggests that these Defendants had the ability to make a living in other industries. Sachs Decl., ECF No. 146-5; Schrader Decl., ECF No. 146-6.

by Plaintiff here. *See infra* Section III.B.1.b.ii.a. Further, the modification required to make this covenant reasonable would render it functionally identical to the version of Paragraph 5(B) the Court enforces *infra* in Section III.B.1.b.ii.b. The Court therefore declines to modify the covenant pursuant to the same line of reasoning discussed *supra* in Section III.B.1.a.i.d.

*e) Breach Assessment*

Because Paragraph 5(A) of the Other Employment Agreements is unenforceable, the Court **GRANTS** summary judgment to the Other Defendants on Plaintiff's breach of contract claims against the Other Defendants, to the extent they are based on alleged violations of that covenant. The Court **DENIES** summary judgment to Plaintiff on the same.

**ii. Non-Solicitation Paragraph 5(B)**

The second restrictive covenant at issue in the Other Employment Agreements provides that the Other Defendants shall not:

> Contact, call upon, communicate, advise, consult, solicit, divert or take away business (or attempt to divert or take away business), and/or conduct any business (or attempt to conduct business) in any manner whatsoever with any customer, client or account of [Plaintiff] with whom the [Other Defendants] had contact, or with whom any person reporting to the [Other Defendants] had contact, during the period of the [Other Defendants'] employment with [Plaintiff], provided that the [Other Defendants are] employed, retained, or in any manner associated with any company or entity that sells any Competing Product.

*See, e.g.*, Nietsch Agmt. ¶ 5(B), ECF No. 2-1. The covenant initially applies for a period of two years following each of the Other Defendants' separation from

Plaintiff, but it is also subject to the violation clause. *Id.*

*a) Enforceability*

Although Plaintiff has legitimate business interests underlying this restriction, *see supra* Section III.B.1.b.i.a, the indefinite scope of the violation clause is "greater than is required for the protection of" those interests. *See Raimonde*, 325 N.E.2d at 547. And though the restrictive covenant is otherwise reasonable,[9] it is not enough to overcome the covenant's overbroad temporal limitation.

*b) Modification*

Though Paragraph 5(B) of the Other Employment Agreements is unreasonable because of the violation clause, this is another instance where the restrictive covenant is reasonable in all other respects. *See supra* Section III.B.1.b.ii.a. As such, the Court elects to modify Paragraph 5(B) by striking the violation clause. The Court will otherwise enforce the covenant as written.

---

[9] The covenant is otherwise tailored to protect Plaintiff's interests because it contains the type of "customer-based restrictions in lieu of geographic restrictions" that are permitted under Ohio law. *Fratelli*, 2025 WL 639315, at *13 (citing *Klaus*, 437 F. Supp. 2d at 734); *see also Paschka*, 2022 WL 1591605, at *8 (enforcing a restriction for customers the employee personally contacted). Moreover, the covenant does not subject the Other Defendants to undue hardship because there are "thousands" of companies in the MRO industry throughout the country, Thompson Dep. 58:5–8, ECF No. 138-3, and the Other Defendants can work for any of them so long as they refrain from doing business with their former customers. *See Horter*, 257 F. Supp. 3d at 909 ("Undue hardship requires a greater showing of impact upon a defendant than simple hardship, and should be determined as of the time the agreement was executed." (citation modified)). Finally, the covenant is not injurious to the public for the same reasons discussed *supra* in Section III.B.1.a.i.c.

*c) Breach Assessment*

Plaintiff argues it is entitled to summary judgment on its claims asserted under this covenant because it has presented evidence establishing that each of the Other Defendants did business with customers at MRO Systems,[10] whom they previously served while working for Plaintiff, during their respective two-year restricted periods. ECF No. 137 at PAGEID ## 2432–41. Rather than present contrary evidence to dispute those transactions, Defendants instead argue that the lack of evidence regarding the act of solicitation by the Other Defendants and causation of damages warrants a denial of summary judgment. ECF No. 135 at PAGEID ## 2232–35.

Defendants' arguments miss the mark. Though there may be genuine issues of material fact related to whether the Other Defendants affirmatively solicited their former customers, Paragraph 5(B) doesn't merely prohibit the Other Defendants from initiating such business; it also prohibits them from "conduct[ing] any business (or attempt[ing] to conduct business) in any manner whatsoever" with those customers. *See, e.g.*, Nietsch Agmt. ¶ 5(B), ECF No. 2-1. So, Defendants' argument on the lack of evidence of solicitation is unavailing. *Fratelli*, 2025 WL 639315, at *10 ("Fratelli contends that he did not breach the non-solicitation provision because he did not solicit or actively reach out to any past customers. . . . Even accepting this as true, the mere acceptance of

---

[10] Except for Patrick, who did business with such customers at 1st Ayd.

business from past customers would breach the non-solicitation provision.").

And there is undisputed evidence establishing that each of the Other Defendants violated Paragraph 5(B) by conducting business with their former customers during their two-year restricted periods. *See, e.g.*, ECF No. 137-38; ECF No. 137-139; ECF No. 137-58; ECF No. 137-13; ECF No. 137-82; ECF No. 137-140; ECF No. 137-99; ECF No. 137-18; ECF No. 137-130; ECF No. 137-138; ECF No. 137-144; *see also* ECF No. 137 at PAGEID ## 2433–40 (detailing additional evidence of breaches by the Other Defendants).

As for damages, Plaintiff has adduced evidence of business income it lost as a result of the Other Defendants' breaches—which is undisputed by Defendants. *See, e.g.*, ECF No. 137 at PAGEID ## 2433–40 (detailing evidence of lost profits); McCurdy Decl., ECF No. 136-2 at PAGEID ## 2336–39. And a showing of lost profits satisfies the damages element of Plaintiff's claim.[11] *See Premix, Inc. v. Zappitelli*, 561 F. Supp. 269 (N.D. Ohio 1983) ("[Plaintiff] is entitled to recover the profits lost due to [Defendant's] breach of his employment agreement." (citation omitted)).

Accordingly, the Court **GRANTS** summary judgment to Plaintiff on its breach of contract claims against the Other Defendants, to the extent they are based on alleged violations of Paragraph 5(B) of the Other Employment

---

[11] The exact amount of damages has yet to be proven; the Court decides only liability at this juncture.

Agreements. The Court **DENIES** summary judgment to the Other Defendants on the same.

### iii. Non-Solicitation Paragraph 6

The final restrictive covenant at issue provides that the Other Defendants "shall not, at any time during [their term of employment with Plaintiff] and for a period of two (2) years [thereafter] . . . recruit, hire, induce, encourage or attempt to induce any employee, sales representative or independent contractor of the Company for the purpose of having" them leave their employment with Plaintiff. *See, e.g.*, Nietsch Agmt. ¶ 6, ECF No. 2-1. This covenant, too, is subject to a violation clause. *Id.*

#### *a) Enforceability*

Plaintiff "has a legitimate business interest in preventing present and former employees from soliciting present and former co-workers to work for competitors." *Fratelli*, 2025 WL 639315, at *17. And while this restrictive covenant is reasonable in all other respects, *see supra* Section III.B.1.a.iv.a, the unreasonable violation clause renders it unenforceable under *Raimonde*.

#### *b) Modification*

Because Paragraph 6 of the Other Employment Agreements would be reasonable but for the violation clause, the Court again exercises its discretion to modify the covenant by striking the violation clause.

*c) Breach Assessment*

Plaintiff asserts a claim under Paragraph 6 against only Kirkpatrick, and it argues it is entitled to summary judgment on the same because Kirkpatrick admitted that he solicited two of Plaintiff's employees in 2024. ECF No. 137 at PAGEID # 2450.

While Plaintiff is correct that the undisputed evidence shows that Kirkpatrick solicited two of Plaintiff's employees in 2024, *see* Kirkpatrick Dep. 256:25–264:4, ECF No. 137-115, it is also undisputed that Kirkpatrick left his employment with Plaintiff on April 30, 2021, TAC ¶ 79, ECF No. 59; Kirkpatrick Decl., ECF No. 146-3. Thus, Kirkpatrick's restriction expired in April 2023, rendering the 2024 solicitations immaterial to Plaintiff's claim. *See* Kirkpatrick Agmt. ¶ 6, ECF No. 2-6. And Plaintiff has presented no other evidence suggesting that Kirkpatrick recruited Plaintiff's employees during his restricted period. *See generally* ECF No. 137.

The Court therefore **GRANTS** summary judgment to Kirkpatrick on Plaintiff's breach of contract claims against Kirkpatrick, to the extent they are based on alleged violations of Paragraph 6 of the Other Employment Agreements. The Court **DENIES** summary judgment to Plaintiff on the same.

**2. Confidentiality Provision**

Unlike the restrictive covenants, the confidentiality provision at issue in the Employment Agreements is identical for all Defendants. That provision provides:

> [Defendants] shall, at all times, keep all Confidential Information[12] confidential, and shall not use such information except while employed by [Plaintiff] for the benefit of [Plaintiff] in the course of [Defendants'] duties hereunder without regard to whether this Confidential Information would be considered not generally known by the public, material or important, by anyone not a party to this Agreement. [Defendants] hereby agree[] to abide by [Plaintiff's] determination that any information is Confidential Information and that the same is of a special and unique nature and value, important and material and that it gravely affects the effective successful conduct of the business of [Plaintiff] and [Plaintiff's] goodwill. [Defendants] further agree[] that all Confidential Information is and shall remain the sole and exclusive property of [Plaintiff] and that upon termination of their employment with [Plaintiff], all records, drawings, blueprints, manuals, letters, notes, reports, copies thereof and all other materials constituting Confidential Information whether prepared by [Defendants] or others, will be left with [Plaintiff] or if not then located on [Plaintiff's] premises returned to [Plaintiff's] principal offices within five (5) days of termination of employment.

Nietsch Agmt. ¶ 7(A), ECF No. 2-1; Davis Agmt. ¶ 7(A), ECF No. 2-3; Kirkpatrick Agmt. ¶ 7(A), ECF No. 2-6; Sachs Agmt. ¶ 7(A), ECF No. 2-7; Schrader Agmt. ¶ 7(A), ECF No. 2-8; Patrick Agmt. ¶ 7(A), ECF No. 130-4; Hoeftmann Agmt. ¶ 7(A), ECF No. 2-5.

---

[12] "Confidential Information" is defined as: (1) information (whether or not reduced to writing and whether or not patentable or protectable by copyright and including information conceived, originated, discovered or developed by the Employee) determined by the Company to be not generally known by the public, about the Company and its methods, processes and products, present or contemplated. Including, without limiting the generality of the foregoing, the names, addresses or specifications of any of its customers, the prices it obtains or has obtained for its services or products, confidential records, data, formulae, specifications, sales catalogues, manuals, inventions, or any other information relating to business strategies, research, development, manufacture, purchasing, accounting, personnel, engineering, marketing, pricing, merchandising or selling; and (2) information received by Plaintiff from third parties in confidence (or subject to nondisclosure or similar covenants). *See, e.g.*, Nietsch Agmt. ¶ 4(A), ECF No. 2-1.

Plaintiff asserts that summary judgment is warranted on its claims asserted under this provision against all Defendants because they "breached the provision not to use such information outside of their employment with [Plaintiff] when they repeatedly solicited their former [] customers." ECF No. 137 at PAGEID # 2451. Plaintiff also argues "Hoeftmann and Nietsch further breached [this provision] when they failed to return the materials upon their departure from [Plaintiff]." *Id.* Finally, Plaintiff contends that "Hoeftmann additionally breached [this provision] when, within weeks of starting at [MRO Systems], Hoeftmann used [Plaintiff's] pricing information to develop [MRO System's] pricing book." *Id.* at PAGEID ## 2451–52. Defendants disagree, arguing that they are entitled to summary judgment because "[t]here is no evidence whatsoever that Defendants breached their non-disclosure obligations." ECF No. 135 at PAGEID # 2239; *see also* ECF No. 138 at PAGEID 4812–19. The Court addresses each of the parties' arguments below.

**a. All Defendants**

In arguing that all Defendants breached the confidentiality provision, Plaintiff makes a blanket assertion that Defendants did so "when they repeatedly solicited their former [] customers." ECF No. 137 at PAGEID # 2451. But Plaintiff fails to explain *how* Defendants violated the confidentiality provisions in allegedly soliciting such customers; Plaintiff details neither the nature of the "Confidential Information" at issue nor the way it was misused. *See generally id.*

Needless to say, Plaintiff fails to present any evidence of the same, and the Court finds none upon its own review. *But see InterRoyal*, 889 F.2d at 111 (explaining that the Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").

Plaintiff has thus "fail[ed] to make a showing sufficient to establish the existence of" a breach of the confidentiality provision by Defendants on these grounds. *Celotex*, 477 U.S. at 322. Accordingly, the Court **GRANTS** summary judgment to Defendants on Plaintiff's breach of contract claims, to the extent they are based on alleged violations of the confidentiality provision under this theory. The Court **DENIES** summary judgment to Plaintiff on the same.

**b. Nietsch**

With respect to Nietsch, Plaintiff asserts that he further violated the confidentiality provision because he failed to return his "MSTAR" device following the termination of his employment. ECF No. 137 at PAGEID # 2452. Plaintiff's sales employees use "MSTAR" devices to access Plaintiff's confidential information, including pricing, product, and customer information. McCurdy Decl. ¶ 11, ECF No. 137-1.

True, Nietsch did not return his MSTAR device to Plaintiff. Nietsch Dep. 71:3–72:10, ECF No. 137-114. But the undisputed evidence shows that Nietsch did not return the MSTAR device because he purchased it with his own money, and Plaintiff told him to keep it. *Id.* Moreover, Plaintiff admits—and the

undisputed evidence shows—that Plaintiff disables its employees' access to confidential information on MSTAR devices "[u]pon termination of employment." ECF No. 137 at PAGEID # 2451; McCurdy Decl. ¶ 11, ECF No. 137-1. What's more, even if Nietsch did still have access to Plaintiff's confidential information on the MSTAR device that he owns, Plaintiff fails to explain—or present any evidence of—how Nietsch misused that confidential information. *See generally* ECF No. 137.

In consideration of the above, no reasonable jury could return a verdict for Plaintiff on this claim. Therefore, the Court **GRANTS** summary judgment to Nietsch on Plaintiff's breach of contract claims, to the extent they are based on alleged violations of the confidentiality provision under this theory. The Court **DENIES** summary judgment to Plaintiff on the same.

**c. Hoeftmann**

As for Hoeftmann, Plaintiff argues that he violated the confidentiality provision by using Plaintiff's confidential pricing information to create MRO System's price book. ECF No. 137 at PAGEID ## 2451–52. Defendants argue there is no evidence of the same. ECF No. 135 at PAGEID ## 2241–42.

The evidence shows that, following the termination of Hoeftmann's employment with Plaintiff, Plaintiff sent Hoeftmann a letter seeking the return of confidential information, including pricing information, that Hoeftmann had "yet to return." ECF No. 135-6 at PAGEID # 2265. Hoeftmann responded, indicating

that he "got rid of [his] eight plus year old computer [in] late February [2018]," and that he had returned other confidential information in his possession. ECF No. 135-7 at PAGEID # 2267. But evidence suggests that there may have been confidential information on Hoeftmann's computer, which he had access to following his employment with Plaintiff until the destruction of the computer in February 2018. Hoeftmann Decl. ¶ 2, ECF No. 135-8 (discussing the letter he received "about the Kimball Midwest materials [he] had previously returned *or destroyed*" (emphasis added)).

Evidence also shows that Hoeftmann may have used that confidential pricing information in January 2018, before the computer's destruction, to create MRO System's price book. Hoeftmann Dep. 154:3–13, ECF No. 138-2. Defendants dispute the characterization of that evidence, Hoeftmann Decl. ¶¶ 3–4, ECF No. 135-8, but they do so with evidence "that the jury would not be required to believe." *Reeves, Inc.*, 530 U.S. at 151 (citation omitted). The Court finds that the evidence presented by the parties "is such that a reasonable jury could return a verdict for" either party. *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

Thus, there are genuine disputes of material fact over whether Hoeftmann used Plaintiff's confidential pricing information to create MRO System's price book in violation of the confidentiality provision. So, the Court **DENIES** summary judgment on Plaintiff's breach of contract claims, to the extent they are based on

Hoeftmann's alleged violation of the confidentiality provision, Hoeftmann Agmt. ¶ 7(A), ECF No. 2-5, in developing MRO System's price book.

**C. Trade Secret Claims**

Plaintiff brings trade secret claims against Defendants under both OUTSA and DTSA. TAC, ECF No. 59 at PAGEID ## 672–74. Only Defendants move for summary judgment on these claims. ECF No. 138.

"The requirements for establishing misappropriation of trade secrets are substantially the same under [DTSA] and [OUTSA]." *Qualus Corp. v. Wilson*, No. 1:23-cv-352, 2023 WL 6929721, at *3 n.2 (S.D. Ohio Oct. 18, 2023) (citation omitted). To prevail on such claims, Plaintiff must show "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Id.* (citation omitted). "[B]ecause the definition and requirements of OUTSA and DTSA are essentially the same," the Court will address these claims together. *Sunjoy Indus. Grp., Ltd. v. Permasteel, Inc.*, No. 2:22-cv-1896, 2023 WL 406211, at *7 (S.D. Ohio Jan. 25, 2023).

Defendants argue that Plaintiff can show neither the existence nor the unauthorized use of any trade secrets. ECF No. 138 at PAGEID ## 4817–19. Plaintiff counters that its "customer information and pricing information are protectable trade secrets" and that Defendants misappropriated the same "to solicit [Plaintiff's] customers and undercut [Plaintiff's] pricing." ECF No. 136 at

PAGEID ## 2308–15. The factual allegations underlying Plaintiff's trade secret claims are largely identical to those underlying its claims that Defendants breached the confidentiality provisions in the Employment Agreements. *Compare* ECF No. 137 at PAGEID ## 2450–52, *with* ECF No. 136 at PAGEID ## 2308–15.

**1. The Other Defendants**

With respect to the Other Defendants, Plaintiff's trade secret claims fail for reasons similar to those discussed *supra* in Sections III.B.2.a–b. Though Plaintiff provides more context here regarding its theory of how the Other Defendants misappropriated Plaintiff's trade secrets in soliciting their former customers, that additional context amounts to unsupported allegations. *See* ECF No. 136 at PAGEID # 2311. As with its claims regarding the confidentiality provisions, *see supra* Section III.B.2.a, Plaintiff fails to present any evidence showing that the Other Defendants solicited their former customers by using Plaintiff's trade secrets. *See generally* ECF No. 136. Plaintiff has therefore failed "to make a showing sufficient to establish the existence of" unauthorized use by the Other Defendants, so its trade secret claims against the Other Defendant cannot survive summary judgment. *Celotex*, 477 U.S. at 322.

The Court therefore **GRANTS** summary judgment to the Other Defendants on Plaintiff's claims under OUTSA and DTSA against the Other Defendants.

**2. Hoeftmann**

For Hoeftmann, Plaintiff's trade secret claims are based on Hoeftmann's alleged misappropriation of non-public pricing information to create MRO System's price book. ECF No. 136 at PAGEID # 2311.

As for whether that pricing information constitutes a trade secret, Plaintiff has "presented testimony that pricing information is valuable and would not typically be shared with third parties," *see* ECF No. 136 at PAGEID ## 2309–10, while "Defendants have presented contrary testimony that the information in this case is obsolete and not trade secrets," *see* ECF No. 138 at PAGEID ## 4817–18. *Presidio, Inc. v. People Driven Tech., Inc.*, 686 F. Supp. 3d 652, 685 (S.D. Ohio 2023) (citation omitted). There is thus a genuine dispute of material fact as to the existence of a trade secret here.[13] *Id.* ("Thus, there are genuine disputes about whether the information in the pricing documents should be considered trade secret; resolving those disputes is left to a jury."). Further, for the same reasons set forth *supra* in Section III.B.2.c, there are genuine disputes of material fact regarding whether Hoeftmann misappropriated that pricing information by using it to create MRO System's price book in January 2018.

Accordingly, the Court **DENIES** summary judgment on Plaintiff's claims under OUTSA and DTSA against Hoeftmann.

---

[13] The parties do not dispute that, if this information is deemed a trade secret, it was acquired by Hoeftmann as a result of a confidential relationship with Plaintiff. *See generally* ECF Nos. 136, 138, 148.

**D. Conversion Claim**

Plaintiff brought a general claim for conversion against Defendants. TAC, ECF No. 59 at PAGEID # 671. In response to Defendants' motion for summary judgment on the same, however, Plaintiff did not contest Defendants' arguments. *See generally* ECF No. 136. Instead, Plaintiff argues "*[w]ith the exception of Plaintiff's claim for conversion* . . . summary judgment for Defendants is not warranted on any claims." *Id.* at PAGEID # 2296 (emphasis added). As such, the Court finds that Plaintiff has abandoned its conversion claim and declines to consider the merits of the same. *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

Because Plaintiff has abandoned its conversion claim, the Court **GRANTS** summary judgment to Defendants on the same.

**E. Tortious Interference Claims**

Plaintiff also brings claims against Defendants for tortious interference with business relationships. TAC, ECF No. 59 at PAGEID # 671. "A tortious interference with a business relationship or contract claim has five elements: (1) a business relationship or contract; (2) the defendant's knowledge of the

relationship or contract; (3) the defendant's intentional or improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *Total Quality Logistics, LLC v. EDA Logistics LLC*, 685 F. Supp. 3d 563, 578 (S.D. Ohio 2023).

Plaintiff argues that (1) it had business relationships with the customers that Defendants serviced while working for Plaintiff, (2) Defendants knew about those relationships by way of their employment, (3) Defendants intentionally and improperly interfered with those relationships by "solicit[ing] those customers in violation of [the Employment Agreements]," (4) Defendants lacked privilege to do so because the "solicitation of a former employer's customers in violation of a non-solicitation agreement is not privileged conduct," and (5) Defendants' misconduct caused Plaintiff to suffer damages in the form of lost profits. ECF No. 136 at PAGEID ## 2315–20.

In other words, Plaintiff's tortious interference claims are just repackaged versions of its breach of contract claims pursuant to the non-solicitation provisions in the Employment Agreements. *See supra* Section III.B.1. But under Ohio law, "though a breach of a duty under a contract or lease necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference." *Digital & Analog Design Corp. v. N. Supply Co.*, 540

N.E.2d 1358, 1368 (Ohio 1989) (citations omitted). "An exception exists, and a tort action may lie, only where the breaching party indicates, by his breach, a motive to interfere with the adverse party's business relations rather than an interference with business resulting as a mere consequence of such breach." *Id.* In any event, "Ohio law prevents a double recovery for the same injury." *Credit Acceptance Corp. v. Davisson*, No. 1:08 CV 107, 2008 WL 11378851, at *5 (N.D. Ohio Nov. 24, 2008).

Here, Plaintiff has presented no evidence of Defendants' independent motive to interfere with Plaintiff's business relationships. *See* ECF No. 136 at PAGEID ## 2316–17; ECF No. 137 at PAGEID ## 2452–55. Instead, Plaintiff points to the contractual breaches themselves as evidence of Defendants' intent to interfere, *see, e.g.*, ECF No. 136 at PAGEID ## 2316–17, but that is not enough for Plaintiff's tortious interference claim to survive under Ohio law. *See Digital & Analog Design Corp.*, 540 N.E.2d at 1368. Moreover, Plaintiff seeks to recover the same damages it seeks in connection with its breach of contract claims, *compare* ECF No. 149 at PAGEID ## 9717–22, *with* ECF No. 136 at PAGEID ## 2318–20, which cannot occur under Ohio law. *See Credit Acceptance Corp.*, 2008 WL 11378851, at *5.

For these reasons, the Court **GRANTS** summary judgment to Defendants on Plaintiff's tortious interference claims. The Court **DENIES** summary judgment to Plaintiff on the same.

### F. Civil Conspiracy Claim

Finally, Plaintiff brings a civil conspiracy claim against Defendants. TAC, ECF No. 59 at PAGEID ## 674–75. Plaintiff and Defendants both argue they are entitled to summary judgment on the same. ECF No. 137 at PAGEID ## 2455–57; ECF No. 138 at PAGEID ## 4822–23.

To succeed on its civil conspiracy claim, Plaintiff must prove "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (citation modified). However, "Ohio law does not recognize civil conspiracy as an independent cause of action" absent the existence of an unlawful act. *Addison Holdings, LLC v. Fox, Byrd & Co., P.C.*, 203 N.E.3d 1259, 1285 (Ohio Ct. App. 2022) (citation omitted); *see also Williams*, 700 N.E.2d at 868 ("An underlying unlawful act is required before a civil conspiracy claim can succeed." (citation omitted)).

Here, the underlying unlawful acts alleged by Plaintiff are the "tortious conduct set forth in the Second [Tortious Interference], Third [Conversion], Fourth [Misappropriation of Trade Secrets under OUTSA] and Fifth [Misappropriation of Trade Secrets under DTSA] Causes of Action." TAC ¶ 157, ECF No. 59 at PAGEID ## 674–75; ECF No. 136 at PAGEID # 2322. But the Court has already determined that Plaintiff cannot prove tortious interference by Defendants. *See supra* Section III.E. And Plaintiff abandoned its conversion

claim. *See supra* Section III.D. Finally, as for the alleged OUTSA and DTSA violations, Plaintiff correctly concedes that its civil conspiracy claim is preempted to the extent it is "based on the misappropriation of trade secrets," ECF No. 136 at PAGEID # 2321. *See Total Quality Logistics, LLC v. Riffe*, No. 1:19-cv-23, 2022 WL 877396, at *11 (S.D. Ohio Mar. 24, 2022) ("OUTSA preempts conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." (citation modified)).

That leaves Plaintiff without a hook; it cannot prove an underlying unlawful act by Defendants, and a "civil conspiracy claim cannot succeed without an underlying unlawful act." *Nilavar v. Mercy Health Sys.-W. Ohio*, 494 F. Supp. 2d 604, 627 (S.D. Ohio 2005) (citation omitted).

Accordingly, the Court **GRANTS** summary judgment to Defendants on Plaintiff's civil conspiracy claim. The Court **DENIES** summary judgment to Plaintiff on the same.

**G. Remaining Issues**

In addition to the above claims, Defendants move for summary judgment on (1) Plaintiff's claim for attorneys' fees pursuant to the fee provision in the Employment Agreements, (2) Plaintiff's claim for injunctive relief, and (3) Defendants' unclean hands defense. ECF No. 138 at PAGEID ## 4823–26.

With respect to Plaintiff's claims for attorney's fees and injunctive relief, the Court finds that supplemental briefing on those remedy-based issues is

warranted considering the Court's ruling on liability at this juncture. The Court therefore **DEFERS** ruling on the same.

Regarding their unclean hands defense, Defendants' argument relies heavily on a case in which Plaintiff was "previously [] found to have unclean hands." ECF No. 138 at PAGEID # 4825 (citing *Midwest Motor Supply Co. v. Davis*, No. C2-02-531, 2004 WL 4058123 (S.D. Ohio Apr. 14, 2004)). In that case, the court found that by inducing the defendant employee to accept employment with Plaintiff in violation of her noncompete agreement with her former employer, the doctrine of unclean hands justified denying Plaintiff's request to enforce its own noncompete agreement against the defendant and her new employer. *Midwest Motor Supply Co.*, 2004 WL 4058123, at *3.

But Defendants have not presented any evidence, nor have they even asserted, that Plaintiff induced any of Defendants to accept employment with Plaintiff in violation of restrictive covenants imposed by their former employers. *See* ECF No. 138 at PAGEID ## 4824–26; ECF No. 148 at PAGEID ## 9698–99. And Defendants cannot rely on Plaintiff's prior conduct with *other* employees to prove unclean hands in this case.[14] The Court therefore **DENIES** Defendants' motion for summary judgment on their unclean hands defense.

---

[14] "The doctrine of unclean hands requires that the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff has made a complaint. The unclean hands doctrine can be applied only to conduct relating to the matter in litigation. The doctrine is not to be used as a 'loose cannon' depriving a plaintiff of an equitable remedy to which it is otherwise entitled merely because it is guilty of unrelated misconduct." *Midwest Motor Supply Co.*, 2004 WL 4058123, at *3 (citation modified).

### H. Motion to Strike

Defendants also move for the Court to strike Plaintiff's "Reply Exhibits and all portions of Plaintiff's Reply Brief relying on them." ECF No. 153 at PAGEID # 10191.

"Motions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Loc. 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). And courts need not consider motions to strike where summary judgment may be resolved without consideration of the challenged materials. *See Long Point Energy, LLC v. Gulfport Energy Corp.*, No. 2:20-cv-4644, 2026 WL 380597, at *3 (S.D. Ohio Feb. 11, 2026) ("Rather than striking material, a court may simply ignore inadmissible evidence." (citation omitted)); *Berry v. Frank's Auto Body Carstar, Inc.*, 817 F. Supp. 2d 1037, 1042 (S.D. Ohio 2011), *aff'd*, 495 F. App'x 623 (6th Cir. 2012) (denying motion to strike as moot because summary judgment could be resolved without considering the challenged materials).

Here, the Court properly resolved the parties' motions for summary judgment without considering the materials challenged by Defendants. *See supra* Sections III.B–F. Therefore, Defendants' motion to strike, ECF No. 153, is **DENIED AS MOOT**.

## IV. CONCLUSION

For the reasons above: (1) Plaintiff's motion for partial summary judgment, ECF No. 137, is **GRANTED in part and DENIED in part**; (2) Defendants' motion

for summary judgment, ECF No. 138, is **GRANTED in part and DENIED in part**; and (3) Defendants' motion to strike, ECF No. 153, is **DENIED AS MOOT**.

The Court **GRANTS** summary judgment to Hoeftmann on Plaintiff's breach of contract claims against Hoeftmann, to the extent they are based on alleged violations of: (1) Noncompete Paragraph 5(A) of the Hoeftmann Agreement; (2) Noncompete Paragraph 5(B) of the Hoeftmann Agreement; or (3) Paragraph 6(B) of the Hoeftmann Agreement.

The Court **GRANTS** summary judgment to the Other Defendants on Plaintiff's breach of contract claims against the Other Defendants, to the extent they are based on alleged violations of Paragraph 5(A) of the Other Employment Agreements.

The Court **GRANTS** summary judgment to Plaintiff on its breach of contract claims against the Other Defendants, to the extent they are based on alleged violations of Paragraph 5(B) of the Other Employment Agreements.

The Court **GRANTS** summary judgment to Kirkpatrick on Plaintiff's breach of contract claims against Kirkpatrick, to the extent they are based on alleged violations of Paragraph 6 of the Other Employment Agreements.

The Court **GRANTS** summary judgment to Defendants on Plaintiff's breach of contract claims, to the extent they are based on alleged violations of the confidentiality provision by Defendants in "repeatedly solicit[ing] their former [] customers." ECF No. 137 at PAGEID # 2451.

The Court **GRANTS** summary judgment to Nietsch on Plaintiff's breach of contract claims, to the extent they are based on alleged violations of the confidentiality provision by Nietsch in failing to return his "MSTAR" device.

The Court **GRANTS** summary judgment to the Other Defendants on Plaintiff's claims under OUTSA and DTSA against the Other Defendants.

The Court **GRANTS** summary judgment to Defendants on: (1) Plaintiff's conversion claim; (2) Plaintiff's tortious interference claims; and (3) Plaintiff's civil conspiracy claim.

The Court **DENIES** summary judgment on Plaintiff's breach of contract claims, to the extent they are based on Hoeftmann's alleged violations of: (1) Paragraph 6(A) of the Hoeftmann Agreement; or (2) the confidentiality provision in the Hoeftmann Agreement, Hoeftmann Agmt. ¶ 7(A), ECF No. 2-5, in developing MRO System's price book.

The Court **DENIES** summary judgment on Plaintiff's claims under OUTSA and DTSA against Hoeftmann.

The Court **DENIES** summary judgment on Defendants' unclean hands defense.

Following this Opinion and Order, the only claims remaining for adjudication are:

- Plaintiff's breach of contract claims (Count I) against Hoeftmann, to the extent they are based on alleged violations of either Paragraph

6(A) or Paragraph 7(A) of the Hoeftmann Agreement; and

- Plaintiff's trade secret claims (Counts IV and V) against Hoeftmann.

The Court **DEFERS** ruling on Plaintiff's claims for attorney's fees and injunctive relief until the parties submit supplemental briefing on those remedy-based issues, should it become necessary. The parties are **ORDERED** to file a joint status report, within **SIXTY DAYS**, indicating how they wish to proceed in this action in light of this Opinion and Order.

The Clerk shall terminate ECF Nos. 112, 114, 138, 145, 146, and 153 as pending motions.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**